UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                      :
TIFFANY SAIDNIA,                                      :
                                                      :
                              Plaintiff,              :
                                                      :          21-CV-7792 (VSB)
              - against -                             :
                                                      :      **OPINION & ORDER**
                                                      :
NIMBUS MINING LLC, REMY JACOBSON,:
GREG BACHRACH, and JEAN-MARC           :
JACOBSON,                                             :
                                                      :
                              Defendants.  :
                                                      :
------------------------------------------------------X

<u>Appearances</u>:

Daniel F. Wachtell
Law Office of Daniel F. Wachtell
New York, NY
*Counsel for Plaintiff*

Fazrad Ramin
Song Ramin PLLC
Bayside, NY
*Counsel for Defendant Greg Bachrach*

Russell Marc Yankwitt
Jonathan Ohring
Yankwitt LLP
White Plains, NY
*Counsel for Defendants Remy and Jean-Marc Jacobson*

<u>VERNON S. BRODERICK</u>, United States District Judge:

        In this case, Plaintiff Tiffany Saidnia ("Plaintiff" or "Saidnia") asserts claims for breach

of contract, unjust enrichment, fraud, and seeks to pierce the corporate veil between Defendant

Nimbus Mining LLC ("Nimbus") and Defendants Jean-Marc Jacobson and Remy Jacobson

(together, the "Jacobsons") and Greg Bachrach, (together with the Jacobsons, the "Individual

Defendants").  (Doc. 14, the "Amended Complaint.")  Before me are the motions to dismiss the

Amended Complaint filed by the Jacobsons, (Doc. 32), and Greg Bachrach, (Doc. 34).  Because

the Amended Complaint contains sufficient factual allegations to plausibly allege Plaintiff's

claims against the Individual Defendants, Defendants' motions to dismiss are DENIED.  Because

limited jurisdictional discovery would eliminate any doubt that diversity jurisdiction exists and

would be an efficient use of the parties' time, the parties are directed to engage in discovery to

establish Nimbus's citizenship before engaging in other areas of discovery.

## I.   **Factual Background**[1]

Defendant Nimbus is a Delaware Limited Liability Company that offered cloud Bitcoin

mining services to consumers.  (Doc. 14 ¶¶ 14, 34.)  Bitcoin is a virtual currency that is created

through a process called "mining" which involves using a computer to solve complex

mathematical calculations and changing algorithms.  (*Id.* ¶¶ 26, 32–33.)  This process requires a

high level of computer processing, or "hashing" power.  (*Id.* ¶ 33.)  For those who do not have a

computer with sufficient hashing power, companies like Nimbus offer customers the ability to

engage in "cloud mining" by paying others for the hashing power of specialized off-site

hardware.  (*Id.*)  As explained on Nimbus's website in June 2014:

> Mining bitcoin is a process that allows you to get or obtain bitcoin.  While you can
> also buy bitcoin directly by going to a bitcoin exchange, the process can be a bit
> cumbersome.  With mining you can procure bitcoin by buying the data processing
> power of specialized hardware ("miners").  The miners process transactions from
> buyers and sellers and get compensated for that effort with bitcoin payments.  All
> of the bitcoins received in payment for your data processing power purchased
> through NimbusMining belong to you.  Cloud mining with NimbusMining was

---

[1] The facts contained in this section are based upon the factual allegations set forth in Saidnia's Amended
Complaint.  (Doc. 14.)  Jurisdictional facts contained in the Opinion & Order are also based on the affidavit
submitted by Plaintiff that described the facts establishing diversity jurisdiction and the substantial efforts made by
Plaintiff to determine Nimbus's citizenship.  I assume the allegations in the Amended Complaint to be true in
considering the motions to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6).  *Kassner v. 2nd Ave.
Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  My reference to these allegations should not be construed as a
finding as to their veracity, and I make no such findings.

> designed for anyone with any level of experience, if you can use Facebook you can use NimbusMining.com.
>
> \*      \*      \*
>
> Cloud Mining is a service that allows anyone to take part in the mining of bitcoins by "renting" miners hardware time in the cloud.  Nimbus Mining has built a powerful network of computers designed to mine bitcoins.  The power those machines generate to find bitcoins is called "Hashing Power".  We resell that hashing power in the form of mining contracts that are measured in Gigahashes (GH).  The more GH you purchase the more power you own and the more bitcoins you mine.  We will guide you through a simple process to get your mining contract started and to get the bitcoins delivered to you.

(*Id.* ¶ 34.)  The Individual Defendants are the three cofounders of Nimbus.  (*Id.* ¶ 23.)  Defendant Jean-Marc Jacobson ("Jean-Marc") and Remy Jacobson ("Remy") were involved in Nimbus's day-to-day operations, (*Id.* ¶¶ 16, 18), and Greg Bachrach, ("Bachrach") served as Nimbus's Chief Executive Officer ("CEO"), (*Id.* ¶ 17).

On July 19, 2014, Saidnia entered into a cloud mining contract (the "Contract") with Nimbus.  (*Id.* ¶ 46.)  The Contract stated that in exchange for a $50,000 upfront fee, Saidnia would be provided cloud mining services at a rate of 14,285 gigahashes.  (*Id.* ¶¶ 47–48.)  The Contract included a term that in the event of a service interruption, customers would be compensated with the lost hashing power once service was restored.  (*Id.* ¶¶ 51–53.)  The Contract also contained a provision providing that

> The laws of the State of New York, without reference to conflict of law rules, govern this Agreement and any dispute that might arise between the Parties.  Any dispute relating in any way to the Services will be adjudicated in any state or federal court in New York County, New York.  Purchaser consents to exclusive jurisdiction and venue in those courts.

(*Id.* ¶ 22.)  On July 29, 2014, Saidnia wired Defendants $50,000 and Nimbus activated the hashing power she purchased on August 19, 2014.  (*Id.* ¶¶ 49–50.)  Over the next six months, Saidnia mined nearly 40 bitcoins through Nimbus that were deposited in her "digital Bitcoin

wallet." (*Id.* ¶ 54.)

On February 23, 2015, Saidnia received an email from Nimbus customer support explaining that because they were consolidating mining facilities, she may experience a service interruption. (*Id.* ¶ 55.) The email promised that customers who did experience an interruption would be compensated for the lost service. (*Id.*) "At no point during or after any mining interruption did Saidnia receive any proof" of this consolidation or that mining services were inoperable. (*Id.* ¶ 66.) From March through May 2015, Saidnia received emails from Nimbus's customer service team explaining that there were delays in the resumption of her services. (*Id.* ¶¶ 55–59.) As compensation, Nimbus offered to provide Saidnia with the estimated number of bitcoins that she could have mined, instead of adding the missed hashing power to the end of Saidnia's contractual term. (*Id.*) Saidnia accepted this offer for 11.827 bitcoins, but never received these bitcoins or recovered access to the cloud-mining services. (*Id.* ¶¶ 62–63.) On October 26, 2015, after the Contract ended, the Nimbus support team emailed her explaining that she was now owed 30.39129 bitcoins for the continued interruption to her services. (*Id.* ¶¶ 64– 65.) The email also stated that if the support team did "not hear back from [Saidnia], we will be sending the bitcoins to the wallet address in your NimbusMining account . . . by the end of the week." (*Id.* ¶ 64.)

Over the next nine months, Saidnia tried to receive her promised bitcoins by contacting Nimbus by phone and email, but her attempts were not successful. (*Id.* ¶¶ 67–71.) Saidnia also contacted the Individual Defendants directly by phone, text and email. (*Id.* ¶¶ 73–75, 80-86.) On April 27, 2017, Saidnia met with Remy in person for lunch, during which he said "he was holding Bitcoins that belonged to her" and promised he would provide the bitcoins that Saidnia was promised. (*Id.* ¶¶ 76–79.) For months following the lunch, Saidnia and Remy

communicated by text.  (*Id.* ¶¶ 80–86.)  In these texts, Remy offered varying reasons for not transferring the bitcoins before eventually ceasing to reply.  (*Id*.)  Saidnia also had several phone calls with Bachrach, during which Bachrach said he had spoken to Remy, "been apprised of Ms. Saidnia's situation," and that "Remy would pay Saidnia the Bitcoins she was owed and had been promised."  (*Id.* ¶ 87.)  As of October 2021, Saidnia has not received any of the nearly $2 million worth of bitcoins she was promised.  (*Id.* ¶¶ 88–89.)

Both Nimbus and its parent company, CoinWare, are insolvent, have no assets, and have ceased business operations.  (*Id.* ¶¶ 143, 146.)  The Individual Defendants siphoned funds from Nimbus to keep it undercapitalized and Nimbus "failed to follow corporate formalities, did not maintain corporate records, was unable to pay its debts as those debts came due, and existed as a mere façade for the operations of the Individual Defendants."  (*Id.* ¶¶ 147–148.)

## II.   **Procedural History**

Plaintiff filed her initial complaint on September 17, 2021.  (Doc. 1.)  In the initial complaint, Plaintiff did "not allege the citizenship of the LLC's members or indicate whether the members are natural persons or corporate entities."  (Doc. 12.)  On October 1, 2021, I issued an order directing Plaintiff to "file affidavits or an emended complaint adequately establishing the existence of subject-matter jurisdiction."  (*Id.*)  On October 5, 2021, Plaintiff filed an affidavit, (Doc. 13), and her Amended Complaint, (Doc. 14).

On February 3, 2022, the Jacobsons filed their motion to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  (Docs. 32, 33.)  The same day, Defendant Bachrach filed a motion to dismiss the Amended Complaint under Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(6) for failure to state a claim.  (Docs. 34, 34-1.)  Plaintiff filed a consolidated opposition to Defendants'

motions on March 17, 2022.  (Doc. 52.)  On April 8, 2022, the Jacobsons, (Doc. 58), and

Defendant Bachrach filed their replies in support of their motions to dismiss, (Doc. 59).

On February 8, 2022, Plaintiff received a certificate of default against Defendant Nimbus

because it had failed to appear.  (Doc. 42.)  On April 8, 2022, Plaintiff and the Jacobsons entered

a stipulation that Saidnia would withdraw her proposed order to show cause and not seek default

judgment against Defendant Nimbus until after the resolution of the Individual Defendants'

motions to dismiss.  (Doc. 58.)

## III.   Legal Standards

### A.  *Subject Matter Jurisdiction*

Federal district courts are courts of limited jurisdiction and must confirm that they have

subject matter jurisdiction over matters before them.  *See Durant, Nichols, Houston, Hodgson &*

*Cortese–Costa P.C. v. Dupont*, 565 F.3d 56, 62–63 (2d Cir. 2009).  Even though no party raises

the question of a court's subject matter jurisdiction "'it is common ground that in our federal

system of limited jurisdiction any party or the court *sua sponte*, at any stage of the proceedings,

may raise the question of whether the court has subject matter jurisdiction.'"  *Sanders v. New*

*World Design Build, Inc.*, No. 19-CV-1071 (VSB), 2020 WL 1957371, at *1 n.2 (S.D.N.Y. Apr.

23, 2020) (quoting *United Food & Com. Workers Union v. CenterMark Props. Meriden Square,*

*Inc.*, 30 F.3d 298, 301 (2d Cir. 1994)); Fed. R. Civ. P 12(h)(3) ("If the court determines at any

time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Under the diversity of citizenship statute, "district courts shall have original jurisdiction

of all civil actions where the matter in controversy exceeds the sum or value of $75,000" and is

between "citizens of different states."  28 U.S.C. § 1332(a).  Corporations are citizens of every

state in which they are incorporated and have their principal places of business.  *See* § 1332(c);

*see also Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010) (a corporation's principal place of business is its "nerve center," meaning its "actual center of direction, control, and coordination"). By contrast, "a limited liability company has the citizenship of its membership" "for purposes of diversity jurisdiction." *Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 51–52 (2d Cir. 2000) (citation omitted); *see also Ocean Units LLC v. Ill. Union Ins. Co.*, 528 F. Supp. 3d 99, 101 (E.D.N.Y. 2021) ("[T]he citizenship of an unincorporated association like a limited liability company is not tied to the state in which it is formed or has its principal place of business; rather, a limited liability company takes the citizenship of each of its members.").

There must be complete diversity of citizenship between all plaintiffs and all defendants. *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 117–18 (2d Cir. 2014). "Furthermore, it is well established that the party seeking to invoke jurisdiction under 28 U.S.C. § 1332 bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete." *Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322–323 (2d Cir. 2001) (alteration, citations, and internal quotation marks omitted). Accordingly, "[d]iversity jurisdiction is unavailable when a complaint fails to allege both a corporation's state of incorporation and its principal place of business." *MinedMap, Inc. v. Northway Mining, LLC*, No. 21-1480-CV, 2022 WL 570082, at *2 (2d Cir. Feb. 25, 2022) (citing *Advani Enterprises, Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 161 (2d Cir. 1998)). Similarly, "[i]n pleading an LLC's citizenship, the identity and citizenship of each member [of the LLC] has to be specifically alleged." *United States Liab. Ins. Co. v. M Remodeling Corp.*, 444 F. Supp. 3d 408, 410 (E.D.N.Y. 2020) (collecting cases).

### B. *Rule 12(b)(2)*

"In deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court

has considerable procedural leeway." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981).  A court may "turn[] directly to personal jurisdiction" to dismiss an action where it faces "a straightforward personal jurisdiction issue" that "present[s] no complex question of state law."  *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999).  A plaintiff opposing a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) "bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit."  *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) (citing *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (per curiam)).  To survive such a motion, "a plaintiff must make a prima facie showing that jurisdiction exists." *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 167–68 (2d Cir. 2015) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013) (internal quotation marks omitted).  This showing may be made through materials outside the pleadings, such as affidavits submitted by parties, *see DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001), and it "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant," *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)) (internal quotation marks omitted).

Plaintiff's averments "must be taken as true to the extent they are uncontroverted by the defendant's" submissions.  *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (internal quotation marks omitted).  The court, however, "will not draw argumentative inferences in the plaintiff's favor, nor must [a court] accept as true a legal conclusion couched as a factual allegation."  *In re Terrorist Attacks*, 714 F.3d at 673 (internal citations and quotation marks omitted).

### C. *Rule 12(b)(6)*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237 (2d Cir. 2007). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (citation omitted). Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted).

### IV. <u>Discussion</u>

### A. *Subject Matter Jurisdiction*

Plaintiff pleads that she is a citizen of California. (Doc. 14 ¶ 13.) Nimbus is "upon information and belief . . . most likely a citizen of Delaware and/or Florida." (*Id*. ¶ 15.) "In pleading an LLC's citizenship, the identity and citizenship of each member has to be specifically

alleged." *U.S. Liab. Ins. Co. v. M Remodeling Corp.*, 444 F. Supp. 3d 408, 410 (E.D.N.Y. 2020) (collecting cases).  Plaintiff explains that "[n]otwithstanding significant endeavor to ascertain the membership of Nimbus Mining LLC, and the citizenship of those members, Plaintiff has been unable to do so."  (Doc. 14 ¶ 15.)  Plaintiff engaged in a diligent investigation into the membership of Nimbus, but Plaintiff's investigation was hampered, at least in part, because "Nimbus has apparently been defunct for five years or more."  (Doc. 13 ¶ 5, 10.)  However, Plaintiff does assert upon information and belief that the Individual Defendants are Florida residents based upon their last known addresses.  (Doc. 14 ¶¶ 16–18.)  Plaintiff also explains that she "is unaware of any other individuals or entities likely to have been members of Nimbus apart from" the Individual Defendants.  (*Id.* ¶ 15.)  The last known address of Nimbus was in Missouri, where it had its principal offices.  (*Id.* ¶¶ 14–15.)  Nimbus was registered with the Delaware Division of Corporations as a Delaware LLC; however, the parties' 2014 Contract stated that Nimbus was a Florida LLC with its principal place of business in Florida.  (*Id.* ¶ 15 n.1.)

Plaintiff engaged in substantial efforts to determine Nimbus's citizenship, including: reviewing the Contract, purchasing Nimbus's corporate information from the State of Delaware, corresponding by email with the National Registered Agents, Inc., reviewing archived webpages, reviewing marketing materials, attempting to contact Defendants directly and through their counsel, and checking PACER for other federal civil lawsuits filed against Nimbus.  (Doc. 13 ¶ 10.)  Defendants have not challenged the factual accuracy of Plaintiff's jurisdictional allegations. (*See* Docs. 33, 34-1.) *See Utica Mut. Ins. Co. v. Emps. Ins. Co. of Wausau*, No. 612CV1293NAMTWD, 2013 WL 12290841, at *4 (N.D.N.Y. Sept. 26, 2013) (accepting diversity jurisdiction allegations as true, despite being based on information and belief, where

defendants did not "dispute the factual accuracy of plaintiff's allegations concerning the parties' citizenship.")

In Plaintiff's October 5, 2021 affidavit, she requests that I "direct limited discovery in aid of establishing . . . subject-matter jurisdiction with respect to Nimbus." (Doc. 13 ¶ 16.) "The Court has authority to order jurisdictional discovery to allow [a party] the opportunity to demonstrate subject matter jurisdiction." *Mills 2011 LLC v. Synovus Bank*, 921 F. Supp. 2d 219, 228 (S.D.N.Y. 2013); *see Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir. 2004) ("[C]ourts generally require that plaintiffs be given an opportunity to conduct discovery on these jurisdictional facts, at least where the facts, for which discovery is sought, are peculiarly within the knowledge of the opposing party").

Here, accepting Plaintiff's undisputed assertions regarding citizenship as true as I must, she has established diversity of citizenship. However, some of Plaintiff's assertions are made "upon information and belief." (*See generally* Doc. 14.) Under these circumstances, where Plaintiff has demonstrated that all publicly available information is consistent with diversity, and defendants have not challenged any of these underlying facts, granting Plaintiff limited jurisdictional discovery is warranted.

### B.  *Personal Jurisdiction*

Contrary to the assertions by Defendant Bachrach, Plaintiff has made a prima facie showing of personal jurisdiction over the Individual Defendants.[2]  The Contract between Nimbus

---

[2] Defendant Bachrach raises the issue of personal jurisdiction on behalf of himself and Defendants Jean-Marc Jacobson and Remy Jacobson.  However, the Jacobsons have not filed any papers formally joining Bachrach's motion challenging personal jurisdiction.  There is case law that suggests under these circumstances that I could assume personal jurisdiction over the Jacobsons.  *See, e.g. New York v. Mountain Tobacco Co.*, No. 12-CV-6276 ADS SIL, 2015 WL 893625, at *2 n.1 (E.D.N.Y. Feb. 26, 2015) ("Because King Mountain did not join in Wheeler's motion to dismiss, the Court 'assume[d], without deciding' that personal jurisdiction over King Mountain exists."). However, I address whether there is personal jurisdiction with regard to each Individual Defendant.

and Saidnia contains a forum selection clause requiring all disputes be "adjudicated in any state or federal court in New York County, New York." (Doc. 14 ¶ 22.) As acknowledged by Defendant Bachrach, a party to a contract with a forum-selection clause "may invoke that clause to establish personal jurisdiction over a defendant that is not party to the contract but that is closely aligned with a party," *Ramiro Aviles v. S&P Glob., Inc.*, 380 F. Supp. 3d 221, 258 (S.D.N.Y. 2019), or closely related to the contract dispute itself, *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009); *Recurrent Cap. Bridge Fund I, LLC v. ISR Sys. & Sensors Corp.*, 875 F. Supp. 2d 297, 307 (S.D.N.Y. 2012). "Non-signatory alter-egos, corporate executive officers, and successors-in-interest have all, at least in some instances, satisfied the closely related test." *Vuzix Corp. v. Pearson*, No. 19 CIV. 689 (NRB), 2019 WL 5865342, at *5 (S.D.N.Y. Nov. 6, 2019) (cleaned up). As the CEO and co-founders of Nimbus who had an active role in the management and operation of the company, the Individual Defendants are all closely aligned with Defendant Nimbus. *See Recurrent Cap. Bridge Fund I, LLC,* 875 F. Supp. 2d at 307 ("many courts have used the doctrine to bind non-party, non-signatory corporate officers to contracts entered into by their corporate employer."); *Nanopierce Technologies, Inc. v. Southridge Capital Mgmt. LLC*, No. 02 Civ. 767, 2003 WL 22882137, at *6 (S.D.N.Y. Dec. 4, 2003) (finding non-signatory to be bound by forum selection clause where the non-signatory was the corporation's chief financial officer).

The Individual Defendants are also alleged to be closely related to the contractual dispute. "A non-party is closely related to a dispute if its interests are completely derivative of and directly related to, if not predicated upon the signatory party's interests or conduct." *Weingard v. Telepathy, Inc.*, No. 05 CIV. 2024 (MBM), 2005 WL 2990645, at *5 (S.D.N.Y. Nov. 7, 2005) (cleaned up). As explained in greater detail below, Saidnia pleads facts supporting

that Nimbus is an alter ego of the Individual Defendants.  Saidnia also alleges that the Individual Defendants structured the terms of the Contract to specifically include these jurisdiction and venue provisions.  (Doc. 14 ¶ 23.)  "Actions such as participating in the negotiations and drafting of the contract . . . have been considered by various courts in determining whether a non-signatory assumed the contract."  *Bernstein v. O'Reilly*, No. 17 CIV. 9483 (DAB), 2019 WL 10995111, at *7 (S.D.N.Y. Mar. 5, 2019) (cleaned up).  The Amended Complaint details a scheme by the Individual Defendants to deprive Plaintiff of her contractual rights.  Further, the Individual Defendants engaged in months of direct communications with Plaintiff related to the dispute; therefore, "enforcement of the forum selection clause against [them] is foreseeable." *Kahala Corp. v. Holtzman*, No. 10 Civ. 4259 DLC, 2010 WL 4942221, at *3 (S.D.N.Y. Dec. 3, 2010); *Great N. Ins. Co. v. Constab Polymer–Chemie GmbH & Co.*, No. 5:01-CV-0882 NAM GJD, 2007 WL 2891981, at *8 (N.D.N.Y. Sep. 28, 2007).  Here, Plaintiff has adequately plead that the Individual Defendants were "closely related" to Defendant Nimbus and the present dispute.  Therefore, personal jurisdiction exists over the Individual Defendants.

### C.  *Alter-Ego Theory*

Determining whether to pierce the corporate veil under New York Law is a fact-intensive inquiry that depends on whether "(a) the owners exercised complete domination of the corporation with respect to the transaction at issue; and (b) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil."  *Paguirigan v. Prompt Nursing Emp. Agency LLC*, 286 F. Supp. 3d 430, 441 (E.D.N.Y. 2017).  Courts will consider a variety of non-exclusive factors including:

> "(1)  disregard  of  corporate  formalities;  (2)  inadequate  capitalization;  (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether

the dealings between the entities are at arms [sic] length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property between the entities."

*MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 63 (2d Cir. 2001).

"The test of alter ego status is flexible, allowing courts to weigh the circumstances of the individual case." *Ret. Plan of UNITE HERE Nat. Ret. Fund v. Kombassan Holding A.S.*, 629 F.3d 282, 288 (2d Cir. 2010) (cleaned up). This determination is not considered "'well-suited' even for summary judgment resolution." *Paguirigan*, 286 F. Supp. 3d at 441. (quoting *First Bank of Americas v. Motor Car Funding, Inc.*, 257 A.D.2d 287, 294, 690 N.Y.S.2d 17 (1999)). A complaint seeking to pierce the corporate veil should not be resolved on a motion to dismiss unless it "is totally devoid of solid, nonconclusory allegations." *Robles v. Copstat Sec., Inc.*, No. 08 CIV. 9572 (SAS), 2009 WL 4403188, at *2 (S.D.N.Y. Dec. 2, 2009).

The Amended Complaint plausibly pleads liability based on piercing the corporate veil. In the Amended Complaint, Saidnia alleges that the Individual Defendants exercised domination of the corporation as the sole co-founders of Nimbus mining. (Doc. 14 ¶¶ 16–18, 23, 144, 146-49.) The Jacobsons were responsible for Nimbus's day-to-day operation and Defendant Bachrach was Nimbus's CEO. (*Id.*) Nimbus was allegedly "undercapitalized, failed to follow corporate formalities, did not maintain corporate records, was unable to pay its debts as those debts came due, and existed as a mere façade for the operations of the Individual Defendants." (*Id.* ¶ 147.) Saidnia also alleges that the Individual Defendants used Nimbus to injure her and engaged in email, text, phone, and face-to-face communications with Saidnia, during which she was assured that she would be receiving the bitcoins that she was promised. (*Id.* ¶¶ 70–86). Remy and Bachrach intermingled corporate and personal assets and guaranteed a corporate debt by assuring Saidnia that she would receive the bitcoins she was owed from Remy apparently

instead of Nimbus.[3]  The Individual Defendants also allegedly siphoned funds and Bitcoins from

Nimbus to keep it undercapitalized and it is now insolvent, has no assets, and has ceased

business operations.  (*Id.* ¶¶ 143, 148.)  These allegations support the theory that Nimbus was an

alter ego of the Individual Defendants.  Accordingly, I find that at this stage, Saidnia may pursue

claims against the Individual Defendants on a veil-piercing theory.

### D.  *Breach of Contract*

Plaintiffs first claim for relief alleges breach of contract against the Individual

Defendants.  Under New York Law, there are four elements to a claim of breach of contract:  (1)

the formation of a contract, (2) the plaintiff's performance of his or her obligations thereunder,

(3) the defendant's failure to perform its obligations, and (4) resulting damages to the plaintiff.

*Nakano v. Jamie Sadock, Inc.*, No. 98 CIV. 0515, 2000 WL 680365, at \*5 (S.D.N.Y. May 25,

2000), *adhered to on reconsideration*, No. 98 CIV. 0515, 2000 WL 1010825 (S.D.N.Y. July 20,

2000).

Defendant Bachrach claims that Saidnia does not allege a plausible claim for breach of

contract against him because as an officer of a corporation, he is not personally liable for a

breach by his corporation.  (*See* Doc. 34-1 at 8.)  Although it is correct that typically "corporate

officers will not be liable for breach of contract," this is not the case if Plaintiff makes "a

showing that it is necessary to pierce the corporate veil to prevent inequity."  *Liberty Mut. Ins.*

*Co. v. Fast Lane Car Serv.*, *Inc.*, 681 F. Supp. 2d 340, 347 (E.D.N.Y. 2010) (citing *Cohen v.*

---

[3] Although the Amended Complaint does not specifically state that Remy was personally going to give Saidnia the bitcoins she was owed—as opposed to Nimbus—I find that it is a reasonable inference based upon the allegations that Remy and Bachrach both indicated that Remy would give Saidnia the bitcoins she was owed.  (Doc. 14 ¶¶ 76–77, 79) (Remy told Saidnia "he was holding the Bitcoins that belonged to her" and promised he would provide the bitcoins that Saidnia was promised); ¶ 87 (Bachrach during various telephone calls with Saidia that he had spoken to Remy, "been apprised of Ms. Saidnia's situation," and that "Remy would pay Saidnia the Bitcoins she was owed and had been promised.").

*Koenig*, 25 F.3d 1168, 1173 (2d Cir.1994)).  As explained above, the Amended Complaint offers a sufficient basis for Saidnia to proceed on a veil-piercing theory.  Further, as Bachrach acknowledges, a "corporate officer who participates in the commission of a tort may be held individually liable, . . . regardless of whether the corporate veil is pierced."  *FLB, LLC v. Cellco P'ship*, 536 F.App'x 132, 133 (2d Cir. 2013).  Saidnia pleads that she never received her Bitcoins although Bachrach "consistently claimed that he would be or had been in touch with Remy; that Remy had been apprised of Ms. Saidnia's situation; and that Remy would pay Ms. Saidnia the Bitcoins she was owed and had been promised." (Doc. 14 ¶ 87.)  The Amended Complaint further alleges that Bachrach "siphoned funds and Bitcoins from Nimbus Mining to keep it undercapitalized."  (*Id.* ¶ 148.)  These allegations are sufficient to plead that Bachrach can be held liable because he was acting for "his own financial interest and not in the interest of the corporation."  *Ross v. Hamilton Beach, Inc.*, No. 89 CIV. 0079 (JFK), 1989 WL 34059, at *1 (S.D.N.Y. Apr. 5, 1989).

### E.  *Fraud*

Saidnia's fourth claim for relief alleges fraud against all defendants.  (Doc. 14 ¶¶ 130–141.)  To plead a claim for fraud, a plaintiff must allege "(1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff."  *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104 (RA), 2021 WL 168541, at *7 (S.D.N.Y. Jan. 19, 2021) (citing *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997)).  Fraud claims are subject to the heightened pleading standard set forth in Rule 9(b) and must be pled with particularity.  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec. L.L.C.*, 797 F.3d 160, 171 (2d Cir. 2015).

16

The Individual Defendants argue that Saidnia does not plead fraud with sufficient particularity.  (Doc. 33 at 13–16; Doc. 34-1 at 9–11.)  The particularity pleading requirements of Rule 9(b) require that "the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402–03 (2d Cir. 2015) (cleaned up).  Saidnia details the statements that she contends were fraudulent as being contained within emails from Nimbus's customer support.  (Doc. 14 ¶¶ 1–141.)  Specifically, Saidnia alleges, among other things, that the representation "that there had been an outage that made it impossible for Defendants to perform their obligations" was fraudulent.  (*Id.* ¶ 132.)  Saidnia identifies the speakers of these fraudulent statements as "Nimbus' customer support."  (*See id.* ¶ 58.)  Although Saidnia does not provide specific names, she explains they came from Nimbus's customer support team, provides direct quotes from the messages, and includes the exact date they were received.  (*Id.* ¶¶ 55–58.)  Saidnia explains that the statements were fraudulent because in reality, "there was never an outage affecting Defendants' computer systems, and instead Defendants invented the outage in order to use the computing power that Plaintiff had purchased for themselves, and thereby mine and retain at least 30.39129 Bitcoins for their own benefit." (*Id.* ¶ 134.)  Thereafter, the Individual Defendants made statements in texts, emails, telephone conversations and during in person meetings, that Saidnia would be paid the bitcoins she was owed and, at various times, that Remy would send the bitcoins she was owed.  Despite representations, Saidnia never received the bitcoins she was owed.  I find that these facts are sufficiently particular for Saidnia to state a claim for fraud.  *See Genna v. Sallie Mae, Inc.,* No. 11 CIV. 7371 LBS, 2012 WL 1339482, at *4 (S.D.N.Y. Apr. 17, 2012) (allowing fraud claim to

continue where Plaintiff "specified the fraudulent statements, the date that the statements were made, and—insofar as is reasonably possible in the context of telephonic conversations with customer service representatives—who made the statements.")

Defendants also claim that Saidnia does not adequately plead scienter.  (Doc. 33 at 13–16; Doc. 34-1 at 9–11.)  The Amended Complaint alleges that the Individual "Defendants made specific, knowingly false misrepresentations," (Doc. 14 ¶ 132), and that they made up this scheme with the intent to deprive Plaintiff of her property.  (*Id.* ¶¶ 134–136.)  A plaintiff must plead facts that give rise to a "strong inference of fraudulent intent," . . . "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).  In the Amended Complaint, Saidnia pleads that the Individual Defendants were the co-founders and the CEO of Nimbus and that each was involved in the day-to-day operations of the company.  (Doc. 14 ¶¶ 16–18, 73–79.)  The Amended Complaint also details the direct communications between Saidnia and the Individual Defendants.  Specifically, Defendant Bachrach engaged in email and phone conversations with Saidnia, (*id.* ¶¶ 73, 87), Defendant Remy Jacobson spoke with Saidnia by phone, text, and in-person, (*id.* ¶¶ 76–82), and Defendant Jean-Marc Jacobson was included on email communications both from Saidnia and from his co-defendants, (*id.* ¶¶ 75–76).  These circumstances support the argument that the Individual Defendants were directly involved with customer communications and would have knowledge of the operation of their company. Saidnia further avers that the Individual Defendants were siphoning money from Nimbus and that she never received any proof that the mining services were inoperable.  (*Id.* ¶¶ 66, 148.)  I find that the Amended Complaint adequately pleads circumstances that provide a factual basis

for each Individual Defendant to have knowledge of the falsity of the statements made to Saidnia.  Accordingly, I decline to dismiss Plaintiff's fraud claims.

### F.  *Unjust Enrichment*

Under New York Law, a claim for unjust enrichment requires a plaintiff to allege "(1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered."  *Cohen v. BMW Investments L.P.*, 668 F. App'x 373, 374 (2d Cir. 2016) (cleaned up).  Plaintiff alleges that the Defendants enjoyed the benefit of the bitcoins she was entitled to, at her expense, by inducing her into an agreement and subsequently refusing to provide Saidnia the benefit she was promised.  (Doc. 14 at 124–127.)  The Jacobsons argue that that "Saidnia's unjust enrichment claim fails to allege that the Jacobsons were enriched."  (Doc. 33 at 18.)  Saidnia does plead that "Defendants will have been unjustly enriched by their continued possession of 30.39129 Bitcoins that properly belong to Ms. Saidnia, which have a current valuation in excess of $1,400,000," (Doc. 14 ¶ 126), and specifically that "Defendants Remy Jacobson, Jean-Marc Jacobson, and Greg Bachrach, through their management roles at Nimbus and through their direct acts, caused the foregoing conduct to occur, and each of them was likewise unjustly enriched as a result," (Doc. 14 ¶ 127).  At this stage, I find that Saidnia has adequately plead the elements of unjust enrichment.

The Individual Defendants also seek to dismiss Saidnia's unjust enrichment claim as duplicative of her contract claim.  (Doc. 33 at 17; Doc. 34-1 at 12.)  Although it is true that Saidnia may not ultimately recover under the same theory for both breach of contract and unjust enrichment, at this stage it is completely appropriate for a plaintiff to plead in the alternative. *Stanley v. Direct Energy Servs., LLC*, 466 F. Supp. 3d 415, 430 (S.D.N.Y. 2020); *Adler v.*

*Pataki*, 185 F.3d 35, 41 (2d Cir. 1999) ("[Rule 8(d)] offers sufficient latitude to construe separate allegations in a complaint as alternative theories, at least when drawing all inferences in favor of the nonmoving party as we must do in reviewing orders granting motions to dismiss . . . " (cleaned up)).  This is particularly true when the Defendants dispute the scope and enforceability of the contract Plaintiff seeks to recover under.  *Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 263 (2d Cir. 1999); *Bergeron v. Rochester Inst. of Tech.*, No. 20-CV-6283 (CJS), 2020 WL 7486682, at *9 (W.D.N.Y. Dec. 18, 2020).

**V.**     **Conclusion**

For the reasons stated above, Defendants' motions to dismiss are DENIED.  Defendants are ORDERED to file their answers to the Amended Complaint within fourteen days from the entry of this order.  The parties are directed to engage in discovery to establish Nimbus's citizenship before engaging in other areas of discovery.  The Clerk of the Court is respectfully directed to terminate the pending gavels at Docs. 32 and 34.

SO ORDERED.

Dated: October 24, 2023
     New York, New York

Vernon S. Broderick
United States District Judge